UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THE UNITED STATES OF AMERICA,
*ex rel.*, ALDONA MANUEL, TAISHA
SEARS AND NEOTHA GIBSON

VERSUS

LIVINGSTON MANAGEMENT, INC.

CIVIL ACTION

NUMBER 09-45-FJP-CN

**RULING**

Defendant Livingston Management, Inc. has moved to dismiss plaintiffs' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The Plaintiffs (or "Relators") have opposed the motion.[2] For reasons which follow, the Court finds that defendant's motion should be denied.

**I.   Factual Background & Complaint Allegations**

The United States Department of Agriculture (USDA) oversees the Rural Development Program (RDP) to provide loans to construct or rehabilitate rental housing in rural communities. The Rural Housing Service is a credit agency under the USDA whose mission is to increase the availability of affordable housing for rural residents. Residents of multi-family housing units may apply for the Rental Assistance Program, whereby certain residents may have

---

[1] Rec. Doc. No. 18.

[2] Rec. Doc. No. 22.

Doc#47801

a portion of their rent subsidized.

Plaintiffs' Complaint alleges that the Rural Development Program property managers, such as the defendant LMI, are required to provide documentation to the United States to ensure that the property is operated in compliance with the program's federal requirements and guidelines. Relators allege that a significant number of tenants that occupied multi-family housing units managed by LMI received federal rental housing assistance through the USDA's Rental Assistance Program. LMI was required to sign "Tenant Income Certifications" to ensure that the tenants complied with the program requirements.

On June 23, 2009, the relators filed this False Claims Act Complaint under seal. In their complaint, relators set forth details regarding an alleged scheme by the defendant to present false claims to the Government. Relators allege the following three counts: Count 1, False Certifications and Verifications; Count 2, Conspiracy to Submit False Claims; and Count 3, Conspiracy to Defraud and Kickbacks.[3] The defendant has now moved to dismiss the complaint under Rules 9(b) and 12(b)(6)[4] of the Federal Rules

---

[3] Rec. Doc. No. 1.

[4] When a Rule 12(b)(6) motion is filed, the Court must treat the allegations in the complaint as true. If a party submits evidence outside of the pleadings which the Court relies on to rule on the motion, the Court must treat the motion to dismiss as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

Doc#47801                                2

of Civil Procedure for failure to state a claim upon which relief may be granted.[5]

### A. Count I

Count I of the Complaint alleges that LMI employees Connie Widner, Janet Molinario, Shelia Dupre, and others, "routinely and falsely under reported tenants' income and misrepresented that said applicants met the Rural Development Program's income requirements."[6] The complaint further alleges that these employees routinely forged tenants' and managers' signatures to Tenant Income Certifications to ensure the rent would continue to be paid to LMI under the program. Relators also allege LMI used the forged Tenant Income Certifications to obtain federal income tax credits under the federal Low Income Housing Tax Credit program.

As part of this alleged scheme, Relators contend they themselves were routinely required to copy old Tenant Certification forms previously signed and change the dates on the old certifications to make it appear that a new certification had been completed by the tenants as required by the program's guidelines. The identified employees then attested knowledge that the Tenant Certification forms were complete and accurate, subsequently

---

[5]Rec. Doc. No. 18.

[6]Rec. Doc. No. 1, p.7, ¶ 21.

Doc#47801 3

submitting the knowingly altered certifications electronically to the Rural Development Program.

Livingston Management contends relators fail to allege a plausible FCA certification claim other than a "vague reference" that the named employees submitted forged certifications to the Rural Development Program.[7] Defendant contends that count I lacks any allegations concerning how the certifications relate to any payments from the government. Defendant further argues there are no allegations that the allegedly false information resulted in LMI receiving any money other than what it was already entitled to under the program. Defendant further contends that plaintiffs have failed to allege that any payments from the government were conditioned upon certification of compliance with the income requirements, which is a prerequisite in the Fifth Circuit to establish FCA liability.

### B. Count II

Count II, entitled "Conspiracy to Submit False Claims," alleges that LMI, through its employees, leased apartments to persons who had applied for Rural Development Program Rental Housing Assistance, but never moved into the federally subsidized apartments. Count II further alleges that LMI rented apartments previously allocated to qualified disabled persons to non-disabled tenants, thereby increasing the amount of rental income paid by the

---

[7]Rec. Doc. No. 18-1, p. 6.

Case 3:09-cv-00045-FJP-DLD   Document 36   05/10/12   Page 4 of 14

Government.

Defendant moves to dismiss this count, arguing that plaintiffs have failed to allege a conspiracy, *i.e.*, that two or more persons formed a conspiracy. Defendant also contends count II lacks any allegations regarding a false representation or that a false representation was even made. Defendant further argues plaintiffs fail in count II to allege the requisite state of mind to support an FCA claim, and also fail to allege any facts showing that the conduct alleged had the potential to influence government decisions. Finally, defendant contends count II does not adequately allege that the false claims caused the government to pay any money.

### C. Count III

Count III, entitled "Conspiracy to Defraud and Kickbacks," alleges that LMI employees received "kickbacks" or had an ownership interest in Interstate Builders, a Louisiana company paid for repairs allegedly made to LMI-managed properties. Count III also alleges that LMI apartment managers were routinely required to assign repair jobs to Interstate Builders who would then bill and be paid for work not performed. Relators allege the fraudulent billing by Interstate Builders resulted in LMI receiving more money from the apartment complexes than that to which it was legally entitled under the fixed management fee agreement.

Defendant argues that count III is likewise deficient for the

same reasons given above, and further that plaintiffs fail to make a connection between the activities alleged in count III and any government payment or claim.

The Court now turns to a discussion of the relevant law to be applied under the facts of this case.

**II.  Law & Analysis**

    **A.  The False Claims Act ("FCA")**

The False Claims Act prohibits: "1)the presentment of a false claim to the Government, 2) the use of a false record or statement to get a false claim paid, and 3) conspiracies to get a false claim paid.[8]  Liability for violation includes a liquidated civil penalty and damages, which need not be shown to state a claim but which if shown will be doubled and may be trebled."

A complaint filed under the False Claims Act "must meet the heightened pleading standard of Rule 9(b), which provides: 'In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'  Rule 9(b) is an exception to Rule 8(a)'s simplified pleading that calls for a 'short and plain statement of the claim.'"[9]

In cases alleging fraud, "Rule 9(b) has long played that

---

[8] *United States, ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 183 (5th Cir. 2009)(citing 31 U.S.C. § 3729(a)(1-3)).

[9] *Id.* at 185 (internal citations omitted).

Case 3:09-cv-00045-FJP-DLD   Document 36   05/10/12   Page 6 of 14

screening function, standing as a gatekeeper to discovery, a tool to week out meritless fraud claims sooner than later."[10]  "The frequently stated, judicially-created standard for a sufficient fraud complaint, the applicability of which to the False Claims Act we will consider later, instructs a plaintiff to plead 'the time, place and contents of the false representation [], as well as the identity of the person making the misrepresentation and what that person obtained thereby.'"[11]

In *United States, ex rel. Grubbs v. Kanneganti*, the Fifth Circuit relied on the earlier opinion by the Eleventh Circuit in *United States ex re. Clausen v. Laboratory Corporation of America, Inc.*,[12] when it held that "presentment of a false claim is the *sin qua non* of a False Claims Act violation without which 'there is simply no actionable damage to the public fisc.'"[13]  Of note, the court held that "it is insufficient for a plaintiff 'merely to describe a private scheme in detail' without offering 'some indicia of reliability' that an actual false claim for payment was made to the Government."[14]  "The *Clausen* court made plain its position that

---

[10]*Id.*

[11]*Id.* at 186, quoting *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999).

[12]290 F.3d 1301 (11th Cir. 2002).

[13]*Grubbs*, 565 F.3d at 186, quoting *Clausen*, 290 F.3d at 1311.

[14]*Id.*, quoting *Clausen*, 290 F.2d at 1311.

to plead a presentment claim, the minimum indicia of reliability required to satisfy the particularity standard are the specific contents of actually submitted claims, such as billing numbers, dates, and amounts."[15]

The *Grubbs* court further stated:

> We have traditionally required that a fraud complaint include "the time, place and contents of a false representation [], as well as the identity of the person making the misrepresentation and what that person obtained thereby."[16] However, we have acknowledged that, "Rule 9(b)'s ultimate meaning is context-specific,"[17] and thus there is no single construction of Rule 9(b) that applies in all contexts. Depending on the claim, a plaintiff may sufficiently "state with particularity the circumstances constituting fraud or mistake" without including all the details of any single court-articulated standard - it depends on the elements of the claim at hand.[18]

However, the *Grubbs* court continued:

> In sum, the "time, place, contents, and identity" standard is not a straightjacket for Rule 9(b). Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose of the False Claims Act. We reach for a workable construction of Rule 9(b) with complaints under the False Claims Act; that is, one that effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud. We hold that to plead with particularity the circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually

---

[15]*Id.*

[16]*Id.* at 188, quoting *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999).

[17]*Id.*, quoting *Williams v. WMX Techs., Inc.* 112 F.3d 175 (5th Cir. 1997).

[18]*Id.*

Doc#47801 8

submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.[19]

With respect to Section 3729(a)(2), which imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government,"[20] the *Grubbs* court stated: "As the Supreme Court recently settled: '[T]he concept of presentment is not mentioned in § 3729(a)(2). The inclusion of an express presentment requirement in subsection (a)(1), combined with the absence of anything similar in subsection (a)(2), suggests that Congress did not intend to include a presentment requirement in subsection (a)(2).'"[21] The court noted that:

> What § 3729(a)(2) requires is that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid by the Government. For this section, the recording of a false record, when it is made with the requisite intent, is enough to satisfy the statute; we need not make the step of inferring that the record actually caused a claim to be presented to the Government.[22]

Section 3729(a)(3) of the False Claims Act subjects to civil

---

[19]*Id.* at 190.

[20]31 U.S.C. § 3729(a)(2).

[21]*Grubbs*, 565 F.3d at 192-93, quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 128 S.Ct. 2123, 2129, 170 L.Ed.2d 1030 (2008).

[22]*Id.* at 193.

Doc#47801 9

liability any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." The Fifth Circuit has held that to prove a False Claims Act conspiracy, "a relator must show: '(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.'[23] The particularity requirements of rule 9(b) apply to the False Claims Act's conspiracy provision with equal force as to its 'presentment' and 'record' provisions. As the D.C. Circuit has stated, a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the over acts ... taken in furtherance of the conspiracy.'"[24]

B. Application

In analyzing the three counts alleged in relator's complaint, the Court must apply the standards set forth in *Grubbs*. The Court finds that the relators have sufficiently set forth details regarding the alleged scheme of the defendant to present false claims to the federal government through its employees: Connie Wilder, Janet Molinario, Sheila Dupre, Ryan Whittington, and Robert Whittington. Relators have alleged that these specific employees

---

[23]*Id.*, quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008).

[24]*Id.*, quoting *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008).

have under-reported the income of tenants, failed to properly and annually certify tenant income, forged signatures, altered dates, and improperly attested to the veracity of Tenant Income Certifications. The time period alleged is the duration of relators' employment by the defendant. It is alleged that by the submission of these Tenant Income Certifications, defendant submitted false claims to the federal government.

The fact that the government may or may not have paid on the claims is irrelevant, as the *Grubbs* court explained: "A person that presented fraudulent claims that were never paid remains liable for the Act's civil penalty. It is adequate to allege that a false claim was knowingly presented regardless of its exact amount; the contents of the bill are less significant because a complaint need not allege that the Government relied on or was damaged by the false claim."[25]

The time of the false claims was the duration of relators' employment with defendant. The place of the false claims is in the Tenant Income Certifications and Verifications submitted by the defendant to the government, not the specific addresses in question. The contents are clearly discussed in the paragraph above, and the employees alleged to have submitted the false claims are clearly identified. Relators have therefore satisfied the "time, place, contents, and identity" standard. At the very least,

---

[25]*Id.* at 189.

Case 3:09-cv-00045-FJP-DLD   Document 36   05/10/12   Page 11 of 14

the Court finds that plaintiffs have alleged "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."[26]

The Court also finds that relators have set forth a claim under Section 3729 (a)(2). Relators have specifically alleged that Widner, Molinario, and Dupre knowingly and intentionally attested to possessing the requirement documentation to support the information contained in the Tenant Certification and Tenant Income Certification was complete and accurate. It is further alleged that those actors knowingly and intentionally submitted forged, altered, and/or manipulated certifications to the Rural Development Program, and that LMI's Vice Presidents knowingly ratified such false certifications.

Considering the conspiracy allegations, the defendant contends no actual conspiracy has been alleged in relators' complaint. However, the substance of the count alleges the defendant leased apartments to individuals who applied for assistance but never actually moved in; failed to lease apartments to qualified disabled persons but rather leased those apartment to non-disabled tenants; and engaged in a kickback scheme for "repairs" with Interstate Builders. Relators have argued, and the Court agrees, that the conspiracy claims have the same time, place, and identity as those set forth in the previous claims; however, the contents in this

---

[26] *Id.* at 190.

count allege the submission by defendants of false information relating to potential residents that never occupied defendant's multi-family housing complexes.

The claim of Relators regarding defendant's relationship with Interstate Builders contains the same time and identities, but in this instance, the "place" of the fraud is the improper bills from Interstate Builders submitted to the federal government by the defendant for work Relators allege knew was never actually performed.

Furthermore, Relators have alleged the requisite mental element required by the law in Paragraphs 34 and 35 of the Complaint for all of the alleged counts.

The Court notes that it is in no way finding that plaintiffs will be successful in proving the claims in their Complaint; rather, the Court is following the dictates of *Grubbs* in holding that plaintiffs have set forth claims under the False Claims Act in accordance with jurisprudence and Rule 9(b) of the Federal Rules of Civil Procedure. The Court has applied the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure and finds that the defendant's motion to dismiss must be denied under the law and facts of this case.

Therefore:

Defendant's motion to dismiss[27] is DENIED.[28]

IT IS SO ORDERED.

Baton Rouge, Louisiana, May 9, 2012.

                                  _____
                                  FRANK J. POLOZOLA
                                  MIDDLE DISTRICT OF LOUISIANA

---

[27]Rec. Doc. No. 18.

[28]The Court has considered all of the arguments of parties whether or not specifically addressed herein.

Doc#47801                                14

Case 3:09-cv-00045-FJP-DLD   Document 36   05/10/12   Page 14 of 14